IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| STEPHEN C. GRATZ,<br>    Plaintiff | )<br>)<br>) |
| v. | ) No. 3:18-cv-00645-REP<br>) |
| DIANE GRATZ aka Diana Gratz,<br>    Defendant | )<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT
FOR EXPIRATION OF STATUTE OF LIMITATIONS**

Diane Gratz, by counsel, in support of her motion to dismiss the Amended Complaint because of the expiration of the applicable statute of limitations (and reserving other pleas and defenses), respectfully submits:

A. Introduction – Allegations of the Amended
Complaint Material to This Motion

1. The Amended Complaint contains three counts against Diane Gratz: Count I for intentional interference with contract and business expectancy, Count II for conspiring with George Gratz to injure Stephen Gratz "in his business of apartment ownership, management and operations" in a "joint scheme the unlawful purpose of which was to tortiously interfere with and cause the termination of the written and unwritten agreements at issue in this action," and Count III, common law civil conspiracy (again with George Gratz) for the alleged misconduct.

2. The factual allegations of the complaint set out a more or less unspecific by evil course of conduct by Diane Gratz and George Gratz, her alleged co-conspirator, with occasional

W. R. Baldwin, III (VSB #16988)
Meyer Baldwin Long & Moore, LLP
5600 Grove Avenue
Richmond, VA  23226
Voice:  (804) 285-3888
Fax:  (804) 285-7779
Email (ECF):  billbaldwin@comcast.net
Email (Firm):  billbaldwin@meyerbaldwin.com

specific allegations:

- ¶2: "This case involves Diane's intentional efforts between 2008 and 2014 to interfere with the written and unwritten contracts between Steve and George."

- ¶4: "She [Diane], directly or by an agent, committed multiple intentional torts and other wrongful acts in the Commonwealth of Virginia, designed to induce George to breach his agreements with Steve."

- ¶8 "George informed Steve that he (George) had an unwritten agreement with Virginia that "you [Steve] will be left the apartment buildings when I [George] die." [George is an alleged co-conspirator with Diane, so matters alleged done by George may be projected to Diane]

- ¶10 "In 2004, George married Diane . . . . At all times relevant to this action, Diane had knowledge of Steve and George's agreements relating to the apartment buildings through her conversations with George and her knowledge of his business."

- ¶16: "From conversations with George, Diane was well aware of George's agreement with Virginia and George's agreements with Steve."

- ¶21: "In or about March 2007, as the renovations to the Sharon Connecticut property began to ramp up, Steve and George had a discussion in Naples, Florida, about the apartment buildings staying with Steve if anything should happen to George . . . . George guaranteed to Steve that his marriage to Diane would not interfere with the business and could not because of what he (George) and Virginia had agreed upon. George told Steve not to worry. George reiterated that he and Virginia had an agreement that the apartment buildings would stay with Steve. This included the "Marco office plaza."

- ¶23: "In May 2008, Steve asked to have lunch with George. The purpose of the lunch was to discuss the preparation of written agreements to memorialize the unwritten contracts between George and Virginia and the contracts between Steve and George.

- ¶26: "Diane's intentional interference with Steve and George's contracts occurred over many years. Ultimately, in or about 2013, Diane finally succeeded in causing George to cut all ties with Steve. Between 2008 and 2013, Diane had many conversations with George while he was in Virginia in which she induced George to terminate his relationships with Steve."

- ¶30: "By February 2013, George was getting alot (*sic*) of pressure from Diane about getting 'them' out from under the $1.8 Million Dollar note that was tied to the Sharon Connecticut house. Diane presented George with an ultimatum: choose between her (Diane) or Steve."

- ¶31: "Diane instructed George to refuse Steve's proposal and to terminate all contracts, written and unwritten, relating to the rental properties.

- ¶34: "Contrary to his unwritten agreement with Steve, George revealed that he had sold the 'Marco office plaza' and, instead of reinvesting the proceeds as agreed with Steve, George used the proceeds to pay off the debt on the Sharon Connecticut property . . . . The Marco office plaza was part of the unwritten commercial business agreement between Steve and George. They had planned on clearing the site and building a hotel or selling the property and reinvesting the capital in additional rental properties in Richmond. George did not pay Steve 25% of the proceeds of the sale of the Marco office plaza."

### B. Virginia Law on the Applicable Statute of Limitations and the Accrual Date for Applying the Limitations Period

3. In this diversity case the Court applies Virginia law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Virginia law likewise controls in determining when the action is commenced for the purpose of tolling the state statute of limitations. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 741 (1980)  The Plaintiff in the Amended Complaint alleges Virginia is the place of the wrongs at issue (¶4:  "[Diane Gratz], directly or by an agent, committed multiple intentional torts and other wrongful acts in the Commonwealth of Virginia, designed to induce George to breach his agreements with Steve") and Stephen Gratz is a resident of Virginia, which means Virginia is the likely situs of his intangible property interests, such as the contract rights here at issue. Virginia law is that matters of procedure, including issues of the statute of limitations, generally are controlled by the law of the forum ("*Lex fori*"), which is Virginia.

4. Since the decision in *Dunlap v. Cottman Transmissions Systems*, 287 Va. 207, 754 S.E.2d 313 (2014), the applicable statutes of limitation for the matters here at issue have been settled. In short, "the five-year statute of limitations in Code § 8.01-243(B) applies to both tortious interference with contract and tortious interference with business expectancy." The five year statute of limitations also appears to apply generally to actions under §18.2-499/500. *Federated Graphics Co. v. Napotnick*, 424 F. Supp. 291 (E.D. Va. 1976);  *followed*, *EER Systems, Inc. v. Armfield, Harrison & Thomas, Inc.*, 19 Cir. 178727, 51 Va. Cir. 84 (1999), *Cherokee Corp. v. Chicago Title Ins. Corp.*, 26 Cir. L93000228, 35 Va. Cir. 19 (1994), *Hiers v. Cave Hill Corp.*, 26 Cir. CL99117788, 51 Va. Cir. 208 (2000).The Fourth Circuit approved the decision in *Federated Graphics* in *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1185 (4th Cir. 1986).

5.	The Plaintiff is suing Diane Gratz for tortious interference with the property interests created by his "written and unwritten" agreements with George Gratz and for conspiring with George Gratz "to tortiously interfere with and cause the termination of the written and unwritten agreements" between George Gratz and Stephen Gratz, under both statutory (Count II) and common law (Count III). Va. Code § 8.01-230, therefore, provides the applicable rule for determining when the five year statute of limitations commenced to run. Under § 230, the right of action (and therefore the commencement of the running of the statute of limitations) accrues when there is both a cause of action and "[s]ome injury or damage, however slight." *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 157, 818 S.E.2d 779 (2018) (internal citations omitted).

6.	George Gratz was a party to the "written and unwritten" contracts described by the Plaintiff and as a matter of law cannot tortiously interfere with contracts to which is he a party. *Francis Hospitality, Inc. v. Read Properties, LLC,* 296 Va. 358,364, 820 S.E.2d 607 (2018). Assuming, for purposes of argument only, that George Gratz nevertheless may be liable for conspiring with Diane to perform an act – the termination by George Gratz of a contract to which he was a party – that would not be tortious if performed by George Gratz himself (a sort of non sequitur; perhaps more so a contradiction in terms), the statue of limitations for conspiracy begins to run for claims under §18.2-499/500 when the complainant is injured. *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 76-77, 360 S.E.2d 350, 351 (1987); likewise for common law conspiracy. *id.*, *citing Gallop v. Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942). Hence the right of action and the running of the statute of limitations begins under all three counts of the Amended Complaint at the same time – when there is a cause of action and there has been some injury suffered by the complaining party.

C. The Factual Problem for Stephen Gratz.

7. The factual problem for Stephen Gratz is that while the amended complaint provides very few allegations that carry an ascertainable date and instead for the most part rely on general bad conduct allegations extending over periods of years, matters relating to the "Marco office plaza" allow for a degree of precision not reflected by the majority of the amended complaint.

8. One of the few "written and unwritten contracts between Steve and George" actually described in the amended complaint is that relating to the "Marco office plaza." In amended complaint paragraph 8 the Plaintiff alleges:

> George informed Steve that he (George) had an unwritten agreement with Virginia that 'you [Steve] will be left the apartment buildings when I [George] die.' George represented to Steve that he intended to honor his agreement with Virginia of which Steve was the intended beneficiary.

In paragraph 14 another oral agreement is pleaded:

> To maximize cash flow to George while George was alive, Steve and George agreed that Steve would take a reduced salary for managing the properties. In the event any of the apartment buildings were sold, and the proceeds not reinvested in either a 1031 like-kind exchange property managed by Steve or another mutually agreed investment, George agreed to pay Steve 25% of the sales price of the property so sold.[1]

Again, there is no date alleged for the creation of this agreement. In paragraph 21, the first reference to "Marco office plaza" makes it clear that this property fell within the same agreement as that described in paragraphs 8 and 14:

> In or about March 2007, as the renovations to the Sharon Connecticut property began to ramp up, Steve and George had a discussion in Naples, Florida, about the apartment buildings

---

[1] Note the allegation is "George agreed to pay Steve 25% of the *sales price* of the property (emphasis supplied); not 25% of the *net* sales price.

6

> staying with Steve if anything should happen to George. . . . .
> George reiterated that he and Virginia had an agreement that the
> apartment buildings would stay with Steve. This included the
> "Marco office plaza". (*sic*)

Finally, in paragraph 34 the Plaintiff alleges a somewhat ascertainable time:

> In or about March 2014 . . . . Contrary to his unwritten agreement
> with Steve, George revealed that he had sold the "Marco office
> plaza" and, instead of reinvesting the proceeds as agreed with
> Steve, George used the proceeds to pay off the debt on the Sharon
> Connecticut property. Steve reviewed the property records and
> discovered that Diane was on the note for the Sharon Connecticut
> house. The Marco office plaza was part of the unwritten
> commercial business agreement between Steve and George. They
> had planned on clearing the site and building a hotel or selling the
> property and reinvesting the capital in additional rental properties
> in Richmond. George did not pay Steve 25% of the proceeds of the
> sale of the Marco office plaza.

From the foregoing, then, Plaintiff Gratz has alleged the existence of an undated oral agreement under which his father George had promised to Stephen (per another unwritten agreement with his now dead wife), that George would "leave" [presumably meaning "devise"] the apartment buildings (including, per paragraph 21, the "Marco Office Plaza") to son Stephen on George's passing. Then, in March 2014, George Gratz "revealed" to Stephen Gratz that in breach of these oral agreements he had sold the Marco office plaza and, in breach of yet another oral agreement, George "did not pay Steve 25% of the proceeds of the sale of the Marco office plaza" or reinvest the proceeds as promised. So, after parsing this history, Stephen Gratz has alleged that at some point before March 2014 George Gratz breached his unwritten agreement "to leave" the apartments *and* the Marco office plaza to Stephen Gratz when he sold the Marco office plaza, and George Gratz breached his agreement to pay Stephen 25% of the proceeds of the sale.

        8.      While all one can infer from this allegation is that the date of the pertinent Marco office plaza transactions was some unpleaded moment after the death of Virginia Lee Gratz, and

while Stephen Gratz did not plead the actual ownership or documentary history for the Marco office plaza, the amended complaint does refer to identifiable real property described in the public registry of deeds for Collier County, Florida, the locus of the "Marco office plaza." Accordingly, this undisclosed history is available for use in determining the unpleaded dates of the transactions that control the application of the statute of limitations to the case. This history establishes that George and Virginia Gratz purchased the Marco office plaza in 1983, Exhibit A. George Gratz breached his supposed agreement with Virginia Gratz for the benefit of Stephen Gratz not later than May 11, 2007, just two months after the March 2007 discussion in Naples, Florida discussed in Amended Complaint ¶21 set out above. Per Exhibit B, May 11, 2007 deed from George Gratz to himself and Diane Gratz[2], shortly after George Gratz was said to have reiterated his promise that "the apartment buildings would stay with Steve"[3] and that "[t]his included the 'Marco office plaza,'" George Gratz conveyed a one-half interest in the Marco office plaza property to his wife Diane. This act repudiated his supposed duty to Stephen Gratz by ending George Gratz's control of the title to this property and terminated his legal ability to honor his supposed obligation to Stephen Gratz. The accomplishment of this breach, dated May 11, 2007 and recorded with the Collier County land records May 18, 2007, is memorialized in Exhibit B. Diane Gratz's role in causing any alleged interference with Stephen Gratz's contract rights as to Marco office plaza was complete when she accepted the joint ownership interest in the property.

---

[2] Collier County, Florida deeds are available to all via the Internet. The reference is *https://www.collierclerk.com/records-search/official-land-records-search*. The form at this web page discloses a space for inputting the document type for searching a deed; the document type is "DEED."

[3] The phrase "stay with Steve" is erroneous since, as the deeds show, the Marco office plaza at no time ever was "with Steve" in order for the property to "stay with Steve."

9. Then, respecting the transaction referenced in Amended Complaint paragraph 34, Stephen Gratz pleaded another breach by George Gratz when, "in or about March 2014 . . . . [c]ontrary to his unwritten agreement with Steve, George revealed that he had sold the "Marco office plaza," paid Stephen nothing and reinvested none of the proceeds. While Stephen Gratz again omits key date information in his pleading, again public records fill the gap. George and Diane Gratz effected this transaction together by undated deed recorded July 17, 2013 (Exhibit C), re-recorded with corrected notarization and deed date of July 10, 2013 (Exhibit D). The property was conveyed to "CDJ Gardens, LLC."

D. The Statute of Limitations Has Expired

10. Virginia law recognizes "repudiation before performance is due" as an "anticipatory breach" of contract. *Bennett v. Sage Payment Solutions*, 282 Va. 49,56, 710 S.E.2d 736 (2011). So, when George Gratz repudiated his duty to "hold the Marco Office Plaza for the benefit of Stephen" by conveying the half interest to Diane Gratz by May 11, 2007 deed, George Gratz was in breach of the contract asserted by Stephen Gratz. This date was more than eleven years before this suit was filed on September 21, 2018. And as noted, Diane Gratz, whom the Plaintiff says acted "to induce George to breach his agreements with Steve," (which includes the Marco office plaza), logically must have induced George to effect this 2007 breach of the "save it for Steve" contract before George could have deeded the property to her – and certainly no later.

11. If this 2007 breach/intentional interference were not, for some reason, sufficient to commence the running of the statute of limitations on the claims in this litigation, then the breach certainly occurred when George and Diane conveyed this property to CDJ Gardens, LLC in July 2013. Even this date was more than five years before suit was filed. Diane as a signatory

9

to the deed and who, as with the 2007 deed, is pleaded to have been "well aware of George's agreement with Virginia and George's agreements with Steve," amended complaint at ¶17, logically must have interfered with Steve Gratz's contract rights and induced George Gratz's breach no later than the recordation of the deed she and he both signed.

12. That Stephen Gratz had suffered injury as a result of both the 2007 and 2013 Marco office plaza transactions seems beyond dispute. The moment after George Gratz conveyed to Diane Gratz in the 2007 deed he no longer had the legal ability to deliver to Stephen Gratz complete ownership of all of the apartment and business building as he is pleaded to have promised Virginia because George had conveyed part of his interest in the Marco office plaza to Diane. The moment after George and Diane Gratz conveyed the entire ownership interest to CDC Gardens in 2013 Steven could not have obtained *any* ownership interest in that property from or through George, so George Gratz once again breached this supposed agreement with Virginia Gratz to deliver to Stephen Gratz complete ownership of all of the apartment and business buildings upon George's passing. The Amended Complaint asserts only one contract between Virginia Gratz and George Gratz, under which George Gratz is said to have been obligated to hold all properties, apartments and Marco business plaza, for the benefit of Stephen Gratz until the passing of George Gratz. That contract as pleaded was breached in 2007 and breached again in July 2013, and Diane Gratz's tortious interference with that contract began with the 2007 transaction and happened again with the 2013 sale. The alleged conspiracy to breach the agreement caries the same statute of limitations and is equally time barred.

Accordingly, any action by Stephen Gratz, against George or against Diane Gratz was time barred before the date this litigation was filed.[4]

### E. The Entire Case Should be Dismissed

13. Plaintiff Gratz presumably will argue that, while his ability to seek recourse for Diane Gratz's tortious interference with George Gratz's contractual duties to Stephen Gratz arising from the Marco office plaza matters may be time barred, his ability to maintain suit for other tortious interferences remains unaffected. The problem is, Mr. Stephen Gratz has not brought a case where he has alleged specific, separate counts for discrete acts of tortious interference. Instead of discrete torts, Stephen Gratz has alleged a single conspiracy beginning in 2007[5] and carried out through occasional discrete events – such as the breach of the Marco office plaza agreement with damages arising at different times by different acts, and going on for years before the September 21, 2018 filing of this case. Stephen Gratz's rights of action accrued in 2007 and if not in 2007 then in 2013, in both cases more than five years before this suit was filed. That the alleged conspiracy might in the future yielded or might have yielded additional damages does not change the accrual of the right of action when George Gratz and Diane Gratz conspired to breach George Gratz's contracts with Virginia Gratz for the benefit of Stephen, or George Gratz's agreement with Stephen on the sale of defined properties such s the Marco office plaza. Accordingly, all matters complained of in the amended complaint are and should be deemed to be time barred and the amended complaint should be dismissed.

---

[4] Of course, the 2014 Settlement Agreement executed by, in part, Stephen Gratz (referenced in Mrs. Gratz's answer to the amended complaint) also compromised his ability to bring this action.

[5] Stephen Gratz should not be allowed to insulate the implied 2007 transgressions by Diane Gratz because his pleadings describe the period "2008-2014" as the time in which Diane Gratz intentionally interfered with Stephen Gratz's contracts. *E.g.*, ¶¶ 2, 47. The Plaintiff's specific inclusion of the Marco Island office plaza into the amended complaint as a part of the "written and unwritten contracts" suffices despite the Plaintiff's failure to attach any dates to these alleged misdeeds by Diane Gratz.

WHEREFORE, premises considered, Diane Gratz, by counsel, prays that the Amended Complaint be dismissed with prejudice at the cost of the Plaintiff.

Respectfully submitted,

DIANE GRATZ

By:   /s/ W. R. Baldwin, III
            Counsel

W. R. Baldwin, III (VSB #16988)
Meyer Baldwin Long & Moore, LLP
5600 Grove Avenue
Richmond, VA 23226
Voice: (804) 285-3888
Fax: (804) 285-7779
Email (ECF): billbaldwin@comcast.net
Email (Firm): billbaldwin@meyerbaldwin.com
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2019, I will serve the below counsel with a true copy of the foregoing upon filing under the ECF procedures of this Court:

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

            /s/ W. R. Baldwin, III